# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### Assigned On Briefs November 24, 2009

## IN RE: ADOPTION OF N.A.H., a minor (d/o/b 06/06/03)

**Direct Appeal from the Chancery Court for Shelby County**
**No. CH-08-1670      Arnold Goldin, Chancellor**

_____

**No. W2009-01196-COA-R3-CV - Filed February 11, 2010**

_____

This appeal arises from the trial court's order dismissing Petitioners' petition for termination of parental rights and for adoption upon determining that the petition was invalid as a matter of law where it was jointly filed by the child's maternal great-aunt and her daughter, the child's aunt. The trial court awarded Father sanctions pursuant to Rule 11 of the Tennessee Rules of Civil Procedure. We reverse the award of sanctions to Father and dismiss the remainder of the appeal on the grounds of mootness.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed in part; Dismissed; and Remanded**

DAVID R. FARMER, J., delivered the opinion of the Court, in which HOLLY M. KIRBY, J. and J. STEVEN STAFFORD, J., joined.

Aaron S. Ayers, Memphis, Tennessee, for the appellant.

Mitzi C. Johnson, Collierville, Tennessee, for the appellee.

## OPINION

The facts relevant to our disposition of this appeal are undisputed. This lawsuit concerns the custody of NAH, a minor child who was born out of wedlock in June 2003. The parties to this appeal are NAH's biological father ("Father") and his maternal great-aunt ("Appellant"). NAH was legitimized as Father's natural child by an order of the Juvenile Court of Memphis and Shelby County in January 2004. The juvenile court awarded custody to NAH's mother ("Mother") and awarded Father visitation and ordered him to pay child support.

In January 2005, Mother left Tennessee for California, leaving NAH in the care of Appellant and Appellant's adult daughter (collectively, "the Aunts"). On January 12, 2005,

Father filed a petition against Mother in the juvenile court alleging that NAH was dependent and neglected and seeking custody. Following a hearing in March 2005, which Father failed to attend,[1] the juvenile court found NAH was dependent and neglected as to Mother and awarded custody to the Aunts, who apparently did appear at the hearing. Following various filings in the juvenile court, Father obtained counsel and filed a motion to reconsider in May 2006. In his May 2006 motion, Father asserted, apparently for the first time, that he did not receive notice of the March 2005 hearing and also asserted his superior parental rights. Following a hearing in July 2006, the juvenile court dismissed Father's petition on July 19, 2006. Father appealed to circuit court, which dismissed the appeal in October 2007 on the grounds that it was untimely filed. In November 2007, Father filed a motion for a new trial and the circuit court remanded the matter to the juvenile court for a determination of Father's rights.

In February 2008, the juvenile court determined that it did not have jurisdiction notwithstanding the order of the circuit court where the matter had been appealed to circuit court. Father filed an appeal to the circuit court on February 20, 2008. Following a hearing in May 2008, on June 16, 2008, the circuit court declared the juvenile court's March 2005 order to be void. In its June 2008 order, the circuit court found that there was no summons for service upon Father in the juvenile court jacket, and that there had been no finding of substantial harm to the child should Father be awarded custody. The circuit court remanded the matter back to the juvenile court for a hearing on Father's original, January 2005, petition for dependency and neglect.

Upon remand, the juvenile court set the matter for a hearing on September 10, 2008. On September 10, 2008, however, the Aunts filed a petition as "co-petitioners" to terminate Mother and Father's parental rights and for adoption of NAH in the Chancery Court for Shelby County. Thus, the matters in juvenile court were stayed pending resolution of the termination and adoption proceedings in chancery court. In the meantime, NAH continued to reside with the Aunts, notwithstanding the absence of a finding that Father was an unfit parent or that returning NAH to Father's custody would result in substantial harm.

In their petition for adoption, the Aunts asserted that Mother's parental rights should be terminated on the grounds of abandonment. They asserted that Father's rights should be terminated on the grounds that he "willfully failed to visit or willfully failed to make reasonable payments toward the support of the child's mother during the four (4) months immediately preceding the birth of the child."

Father filed his answer to the Aunts' petition for adoption in November 2008. In his

---

[1]Father asserts he was not served with notice of the March 2005 hearing.

answer, Father asserted the petition for adoption should be dismissed for failure to state a claim. He also asserted the affirmative defenses of collateral estoppel, res judicata, laches, and the statute of limitations. In January 2009, Father filed a motion to dismiss. Father asserted that he had been regularly exercising visitation with NAH and paying child support since March 2005, and that he had been "caught in a procedural quagmire between Juvenile Court and Circuit Court" that began with the invalid March 2005 order of the juvenile court. Father also asserted that Tennessee's adoption statutes do not contemplate joint adoption of a child by unmarried co-petitioners. He asserted that the Aunts' petition was invalid and failed to state a claim where the co-petitioners were mother and daughter, and not a married couple. In March 2009, he filed a motion for sanctions in accordance with Rule 11 of the Tennessee Rules of Civil Procedure. In his motion, Father asserted that the Aunts had filed the petition for adoption in order to cause unnecessary delay and needless increase in the cost of litigation. He further asserted that the allegations in the petition for adoption were not warranted by existing law and were frivolous.

Following a hearing on April 21, 2009, the chancery court granted Father's motion to dismiss on the grounds that, in accordance with the Attorney General's opinion of December 12, 2007, the Aunts' petition was invalid on its face because the statutes do not contemplate a joint petition for adoption by two unmarried adults. The trial court also granted Father's motion for sanctions and awarded Father attorney's fees and expenses in the amount of $6,836.75. The trial court entered final judgment on April 23, 2009, and Appellant filed a notice of appeal on May 21, 2009.

### Issues Presented

Appellant presents the following issues for our review:

(1)     Whether the Chancery Court erred in dismissing the Petition for Adoption based on Attorney General Opinion 07-162 by finding the Petition for Adoption void on its face.

(2)     Whether the Chancery Court erred in failing to treat the Motion to Dismiss as a Motion for Summary Judgment.

(3)     Whether the Chancery Court erred in awarding sanctions against the Appellant under Rule 11.02(1) of the Tennessee Rules of Civil Procedure.

## *Standard of Review*

As noted above, the facts relevant to our analysis of the trial court's judgment in this case, and to our disposition of this appeal, are not disputed. Therefore, even assuming the trial court should have treated Father's motion to dismiss as a motion for summary judgment, our analysis must focus on whether Father was entitled to judgment as a matter of law. Our review of questions of law is *de novo* with no presumption of correctness. *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000); Tenn. R. App. P. 13(d). Likewise, the construction of a statute is a question of law which we review *de novo*, with no presumption of correctness attached to the determination of the trial court. *Waters v. Farr*, 291 S.W.3d 873, 881 (Tenn. 2009).

## *Discussion*

We begin our discussion of the issues presented for our review by noting that only NAH's great-aunt filed a notice of appeal to and a brief in this Court. Appellant's co-petitioner in the trial court has not appealed the trial court's dismissal of the adoption petition. Accordingly, the question of whether the trial court erred by determining that the petition for adoption should be dismissed on the grounds that the adoption statutes do not contemplate a joint petition for adoption by unmarried adults is moot.

We recently reiterated that "'[A] court only exercises its 'jurisdiction' when it is called upon to 'adjudicate a controversy.'" *Pub. Employees For Envtl. Responsibility (Peer) v. Tennessee Water Quality Control Bd.,* No. M2008-01567-COA-R3-CV, 2009 WL 1635087, at *6 (Tenn. Ct. App. June 10, 2009)(quoting *Hurley v. Univ. of Tennessee at Knoxville*, 188 S.W.3d 519, 522(Tenn. 2006) (quoting *Kane v. Kane*, 547 S.W.2d 559, 560 (Tenn.1977))). "'To 'adjudicate' is not simply to render a decision or an opinion. To 'adjudicate' means '[t]o settle in the exercise of judicial authority. To determine finally.'" *Id.* (quoting *id.* (quoting Black's Law Dictionary 42 (6th ed.1990))).

To retain its character as a justiciable controversy which may be adjudicated by the court, the controversy must remain alive throughout the litigation process, including the appeal process. *McIntyre v. Traughber*, 884 S.W.2d 134, 137 (Tenn. Ct. App. 1994). Subject to only limited exceptional conditions, the appellate courts decline to address appeals that do not involve a genuine and live controversy requiring the "present adjudication . . . involving present rights." *State ex rel. Lewis v. State*, 347 S.W.2d 47, 48 (Tenn. 1961)(quoting *Southern Pac. Co. v. Eshelman*, 227 F. 928, 932 (D.C.Cal.1914)); *McIntyre*, 884 S.W.2d at 137. This Court will not render advisory opinions or "decide abstract legal questions." *Id.* (citations omitted). Rather, a lawsuit that no longer requires the adjudication of the parties' rights is no longer justiciable and will be dismissed as moot. *McIntyre*, 884

S.W.2d at 137. Our primary consideration when deciding if a lawsuit has become moot "is whether changes in the circumstances existing at the beginning of the litigation have forestalled the need for meaningful relief." *Id.* (quoting Federal Practice and Procedure § 3533.3, at 261). Therefore, we will consider a case to be moot "if it no longer serves as a means to provide relief to the prevailing party." *Id.* Whether a claim has become moot is a question of law to be decided by the court. *Hurd v. Flores*, 221 S.W.3d 14, 30 (Tenn. Ct. App. 2006).

Although Tennessee courts have recognized exceptions to the mootness doctrine, it is not easily overcome. The two most common exceptions involve issues of great public interest and importance to the administration of justice, and issues that are capable of repetition yet evading review. *McIntyre*, 884 S.W.2d at 137. The determination of whether to consider a case that fits into an exception to the mootness doctrine is within the discretion of the appellate court. *Id.*

In the present case, although we believe the question of who may co-petition to adopt and, therefore, be the legal parents of a minor child is a matter of great public importance, we are not convinced that the circumstances of this litigation justify considering the issue raised despite the fact that it is now moot because one of the co-petitioners has decided not to pursue an appeal of the dismissal of her petition. Regardless of whether we affirm or reverse the trial court's judgment on this issue, the trial court's judgment with respect to Appellant's co-petitioner is final and has not been appealed. She is no longer a party to this lawsuit; she no longer has a petition for adoption pending for adjudication by the courts; and she no longer has the right to co-petition along with Appellant. We decline to exercise our discretion to consider a question despite the fact that it has become moot, thereby acting in an advisory capacity, in circumstances where a party has failed to avail themselves of the litigation process. *See Pub. Employees For Envtl. Responsibility (Peer) v. Tennessee Water Quality Control Bd.*, No. M2008-01567-COA-R3-CV, 2009 WL 1635087 (Tenn. Ct. App. June 10, 2009). We accordingly decline to address whether the trial court erred in dismissing the joint petition for adoption where the issue is moot and requires an advisory opinion.

We next turn to whether the trial court erred in granting Father's motion for sanctions under Rule 11 of the Tennessee Rules of Civil Procedure. Rule 11.02 provides:

By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,–

(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

(3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denial of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

Further, Rule 11.03(3) provides:

When imposing sanctions, the court shall describe the conduct determined to constitute a violation of this rule and explain the basis for the sanction imposed.

In this case, the trial court stated in its order awarding sanctions:

The Petitioners should have filed their request for termination in the Memphis and Shelby County Juvenile Court as matters involving these parties and the minor child were pending in the Juvenile Court at the time the Petition for Adoption was filed.

The trial court further stated:

The Petition for Adoption was filed for the improper purpose of delaying the Juvenile Court hearing on Father's Petition for Dependency and Neglect and is therefore sanctionable pursuant to Rule 11.02(1) of the Tennessee Rules of Civil Procedure.

We are not insensitive to the fact that this lawsuit has appeared in the juvenile court, the circuit court, and the chancery court; that Father's 2005 petition for dependency and neglect has not been finally adjudicated notwithstanding the passage of more than five years; and that Father has, indeed, been caught in a procedural quagmire. However, we emphasize that the primary purpose of Rule 11.02 is to deter "abuse in the litigation process." *Andrews v. Bible*, 812 S.W.2d 284, 292 (Tenn. 1991). The supreme court has characterized Rule 11 as a "potent weapon that can and should be used to curb litigation abuses," but only with "utmost care." *Id.*

-6-

When determining whether conduct is sanctionable under Rule 11, the courts apply a standard of "objective reasonableness under the circumstances." *Hooker v. Sundquist*, 107 S.W.3d 532, 536 (citing *Andrews*, 812 S.W.2d at 288). "Sanctions are appropriate when an attorney submits a motion or other paper on grounds which he knows or should know are without merit, and a showing of subjective bad faith is not required." *Id.* (quoting *Boyd v. Prime Focus, Inc.*, 83 S.W.3d 761, 765 (Tenn. Ct. App. 2001)). When deciding whether to impose sanctions under Rule 11, the trial court should consider the totality of the circumstances. *Id.*

In light of the entire record, we cannot agree that sanctions are warranted in this case. First, we note that the Aunts' petition was one for adoption; it could not be filed in the juvenile court. Second, nothing in the record suggests that the Aunts filed their petition for adoption merely to delay the proceedings in this case. The Aunts have cared for NAH for most of his life. Despite Father's assertion to the contrary, there is nothing in the record to suggest that they filed the petition for adoption merely to delay the inevitable return of NAH to Father's custody. Third, we do not agree with Father's assertion that the final outcome of this matter is inevitable. As Father submits, there has yet to be a hearing on whether returning NAH to Father's custody would result in substantial harm to the child. Fourth, the Aunts' petition sought the termination of both Mother's and Father's parental rights. It does not appear that Mother's rights have been adjudicated, or that they have been given any consideration since 2005. Finally, the only valid custody order which has been entered in this matter is the 2004 order of the juvenile court awarding custody to Mother. There is nothing in the record to demonstrate that the Aunts ever filed a motion to intervene in this case; the juvenile court's order of March 2005 granting them custody of NAH has been declared void by the circuit court; and the Aunts are not a party to the petition for dependency and neglect now pending in the juvenile court. Rather, NAH is in their physical custody merely because Mother left him there. Sanctions are not justified where a party seeks to exercise the right to avail himself of the litigation process. *Brown v. Shappley*, 290 S.W.3d 197, 202 (Tenn. Ct. App. 2008). In this case, although we are not insensitive to the amount of time, money, and emotional energy spent in this matter, we cannot say that the Aunts sought to abuse the litigation process. Accordingly, we reverse the award of sanctions to Father.

### *Holding*

In light of the foregoing, we reverse the trial court's award of sanctions to Father and dismiss the remainder of the appeal as moot. Father's requests for attorney's fees on appeal are denied. Costs of this appeal are taxed equally, one-half to Father and one-half to

Appellant and her surety, for which execution may issue if necessary. This matter is remanded to the trial court for further proceedings consistent with this opinion.

_____
DAVID R. FARMER, JUDGE